Clayton BANE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 22A01–9104–CR–120.

Court of Appeals of Indiana,
First District.

Oct. 22, 1991.

William L. Francis, Tackett, Taurman & Sonne, New Albany, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Is it error for a judge to sentence a defendant and, moments later, in the same consolidated hearing with the same parties, revoke the defendant's probation on a prior conviction without requiring additional proof that the defendant violated his probation by committing the crime for which he was sentenced a few moments earlier? It is not.

In 1980, defendant-appellant Clayton Bane was convicted of robbery, a Class A felony.[1] He received a total sentence of 20 years, with six executed and 14 on probation. Early in 1981, his sentence was modified so that the entire balance was to be on probation.

A few years later, Bane became involved with 12 year old Laura Garbrough, manipulating her away from her family. He eventually married her, but as Laura moved into her later teen years, she began to try to escape Bane. The relationship soured until, on July 4, 1990, Bane shot and killed Laura from his car as she stood outside the car talking to him.

The Floyd County Prosecutor brought charges of murder[2] and voluntary manslaughter[3] against Bane. As a result of

1. IND.CODE 35–42–5–1.

2. IND.CODE 35–42–1–1.

3. IND.CODE 35–42–1–3.

these charges, the prosecutor moved to revoke Bane's probation on the robbery sentence on January 14, 1991. *Record* at 10. On January 30, 1991, after a jury trial, Bane was found guilty of murder and acquitted of manslaughter. On February 11, 1991, the prosecutor moved to consolidate the hearings for Bane's sentencing on the murder conviction and the motion to revoke probation. *Record* at 17. The trial court granted the motion the next day. *Record* at 18.

On February 26, 1991, the trial court held the consolidated hearing. During the sentencing phase of the hearing, the judge specifically listed Bane's violation of probation as one of many aggravating factors before enhancing Bane's sentence to the maximum 60 years' imprisonment. *Record* at 90. When Bane gave his statement during the sentencing phase of the hearing, he called the Prosecutor a "jughead" and a "worthless bastard." *Record* at 68. Accordingly, the judge sentenced Bane to one year of imprisonment for contempt of court, to be served consecutively to the 60 year murder sentence. *Record* at 93-94.

After apprising Bane of his right to appeal,[4] the judge proceeded immediately to the probation revocation phase of the hearing. During this phase, the prosecutor presented two witnesses. New Albany Police Officer Mike Helm testified that Bane was arrested for, and convicted of, robbery in 1980, and Floyd Superior Court Probation Officer Gary Collins testified Bane commenced a 20 sentence in December 1980 for which he was still on probation.

When the judge asked if Bane's counsel had any remarks, counsel's only request was that the judge defer revocation until the Indiana Supreme Court ruled on Bane's appeal from the murder conviction. *Record* at 109. After denying the motion, the judge revoked Bane's probation "based on the evidence [he] heard" that day, *Record* at 110, and sentenced Bane to 20 years' imprisonment, with credit for time

already served, to be served consecutively to the 60 year murder sentence and the one year contempt of court sentence. *Record* at 110.

Employing the same counsel as he had at the consolidated hearing, Bane now appeals the revocation of his probation. His argument is quite simple: because the State, during the probation revocation phase of the hearing, failed to introduce any evidence of the murder conviction for which he had just been sentenced, the revocation of his probation must be reversed for want of sufficient evidence. The appealing nature of this argument, though seemingly supported by several decisions of the courts of this state, pales under the glare of the facts in the record before us.[5]

▮ It is, of course, the law that a defendant's probation can be revoked upon a showing by a preponderance of the evidence that the defendant committed an additional crime. IND.CODE 35-38-2-1(b)(2); 35-38-2-3(e); *Jaynes v. State* (1982), Ind. App., 437 N.E.2d 137. The State must show the second crime was committed while the defendant was on probation for the first crime. IND.CODE 35-50-1-2(b)(1); *Pawloski v. State* (1990), Ind.App., 555 N.E.2d 851. The requirement that the defendant refrain from committing additional crime is one of the conditions of probation, regardless of whether the probation order mentions the requirement. *Boyd v. State* (1985), Ind.App., 481 N.E.2d 1124; *Jaynes, supra.* As Bane himself concedes, he was convicted of Laura's murder on January 30, 1991 and sentenced for that conviction on February 26, 1991. *Appellant's Brief* at 2-3. His only avenue of redress, then, is to demonstrate the trial judge improperly took judicial notice of the sentencing hearing when he revoked Bane's probation.

▮▮ In Indiana, a "trial court may not judicially notice its own records in another case previously before the court even on a

---

4. Bane's appeal from the murder conviction is currently pending before our supreme court.

5. Bane also alleges reversible inconsistency in the jury's verdicts on the underlying murder and manslaughter charges. That question, however, is one for our supreme court in its review of Bane's murder conviction, and we will not address it further.

related subject and related parties." *Freson v. Combs* (1982), Ind.App., 433 N.E.2d 55, 59. *See also Treesh v. DeVeny* (1945), 116 Ind.App. 305, 64 N.E.2d 41. The rule applies in criminal proceedings, *see, e.g., Smith v. State* (1983), Ind., 443 N.E.2d 1187, *appeal after remand* 454 N.E.2d 412, including hearings on petitions to revoke probation. *See Justice v. State*, (1990), Ind.App., 550 N.E.2d 809; *Brown v. State* (1983), Ind.App., 458 N.E.2d 245, *trans. denied.*

In *Brown*, we stated in dicta that the revocation hearing court would have erred had it taken judicial notice of the defendant's involuntary manslaughter trial held earlier in the same court. *Id* at 250. Moreover, we noted that, even if judicial notice had been proper, review of the facts noticed would have been impossible because the record did not contain any such facts. *Id* at 251. In *Justice*, we mentioned in passing the impropriety of the revocation hearing judge's reliance in 1989 on his own knowledge of the defendant's 1985 burglary trial as a basis for revocation. *Id* at 811. We also reiterated that we had no means to review the judicially noticed facts. *Id.*

■ Here, however, we have neither an old (or even recent) prior proceeding nor a record devoid of the relevant facts. Instead, we have a consolidated hearing, with two chronologically adjoining phases, both attended by the defendant, presided over by one judge, and argued by the same counsel. While the sentencing on the murder conviction and the revocation of the robbery probation were "different matters" for purposes of the general rule, the consolidation of the two matters in a single hearing nullifies the distinction for purposes of admission of evidence. *See Russell v. Johnson* (1943), 220 Ind. 649, 46 N.E.2d 219.

In *Russell*, our supreme court, relying on an earlier Massachusetts decision, discussed the three types of consolidation. In the first two types, the separate actions disappear and become one action. In the third type, the two actions "grow out of a single transaction or ... involve an inquiry into the same event in its general aspects."

*Id* at 659, 46 N.E.2d at 223 (quoting *Lumiansky v. Tessier* (1912), 213 Mass. 182, 188–89, 99 N.E. 1051, 1053). "[T]hey continue separate so far as concerns docket entries, verdicts, judgments and all aspects save only the one of joint trial." *Id.* The consolidation is designed primarily to avoid "costs and delay. Each record is that of an independent suit, *except in so far as the evidence in one is, by order of the court, treated as evidence in both.*" *Id* (quotation and citation omitted) (emphasis added).

The present case is of the latter type. The murder sentencing and robbery probation revocation proceedings are separate but related events, involving common factual questions. Thus, though the hearings could easily have been held separately, and while the appeals have been filed separately, and the transcript of the consolidated hearing bears a different cause number for each phase, the consolidation order allows a joint hearing and joint evidence. *See Trusler v. Galambos* (1958), 238 Ind. 195, 149 N.E.2d 550 (before consolidation occurs, trial court should issue an order of record stating that consolidation will occur).

Moreover, while a petition to revoke probation triggers certain due process rights, "a revocation hearing is in the nature of a civil action," *Shumaker v. State* (1982), Ind.App., 431 N.E.2d 862, 863 *trans. denied,* and we are not persuaded that Bane, who had notice of the consolidated hearing and was represented by counsel throughout both phases of the hearing, suffered any prejudice to his due process rights by the consolidated admission of evidence.

The evidence that Bane was convicted of murder was admitted in the sentencing phase of the hearing, and conclusively established that he committed a crime for purposes of the immediately subsequent probation revocation phase. Moreover, the record before us is replete with the facts of Bane's commission of, and conviction and sentencing for, the murder of his estranged wife. The evidence is sufficient to sustain the revocation of probation.

Even if the consolidation order did not control the admission of evidence, there would nonetheless be no error. The general rule against judicial notice of other pro-

ceedings is designed to ensure that facts alleged are indeed truly fact, not mere allegations. As our supreme court stated in *Fletcher Sav. & Trust Co. v. American State Bank of Lawrenceburg* (1925), 196 Ind. 118, 147 N.E. 524, from which all the above cited cases discussing judicial notice descend:

> Matters of fact may be subject to a reasonable doubt as to their existence, and inasmuch as judicial notice of a fact takes the place of proof thereof, and is of equal force as the proof, the court should exercise extreme caution in taking judicial notice of facts subject to proof without introduction of evidence in support of the same.

*Id* at 135, 147 N.E. at 530 (citations omitted). The rule, though eminently well-grounded and well-settled, has no application in the present case. The evil the rule is designed to prevent has been fully protected against here. The evidence at issue was introduced in the first phase of the consolidated hearing, and its use in the second phase is not made impermissible simply by the change in cause numbers. *Russell, supra.* Were we to adhere blindly to the rule, while ignoring the fact that the rule's purpose has been fulfilled, we would ignore Justice Oliver Wendell Holmes's time-honored admonition that "general propositions do not decide concrete cases." *Lochner v. New York* (1905), 198 U.S. 45, 76, 25 S.Ct. 539, 547, 49 L.Ed. 937, 949 (Holmes, J., dissenting).

The recent decisions of this court in *Weatherly v. State* (1990), Ind.App., 564 N.E.2d 350, *Eckes v. State* (1990), Ind.App., 562 N.E.2d 443, and *Dalton v. State* (1990), Ind.App., 560 N.E.2d 558 are not contrary to our holding today. In each of those cases involving revocation of probation for commission of an additional crime, no evidence was presented to justify the revocation because no *evidentiary* hearing, as required by IND.CODE 35–38–2–3 was held prior to the revocation decision being made. In *Dalton*, the revocation hearing judge had a conversation with Dalton, Dalton's attorney, and the prosecutor. She then took Dalton's oath, ascertained his identity, and revoked his probation. In

*Eckes*, after the revocation hearing commenced, the judge found Eckes to have violated his probation before the prosecutor could even present the State's case. In *Weatherly*, no witnesses other than Weatherly himself were sworn, and no testimony was taken. The judge based her revocation decision solely on the allegations in the petition to revoke and a probation officer's unsworn answer (to a question from the judge) that Weatherly had completed part of his alternate sentence.

No such infirmities exist here. The due process concerns underlying our decisions in *Weatherly, Eckes,* and *Dalton* were answered by the trial court's procedure in this case: over the course of the consolidated hearing, the State presented evidence that Bane was convicted of murder, and that he was on probation at the time of the murder. In turn, Bane was given a full and fair opportunity to conduct cross-examination and to present his own case.

There being no error, the judgment of the revocation hearing court is in all things affirmed.

ROBERTSON and BUCHANAN, JJ., concur.